# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CINDY ZURAKOV and MEFAIL SERIFOSKI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> AMERICOLLECT, INC., <br><br> Defendant. | Case No.: 19-cv-1412 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Cindy Zurakov, formerly known by her maiden name of Cindy Alexander, is an individual who resides in the Eastern District of Wisconsin (Washington County).

4. Plaintiff Mefail Serifoski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

6. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that such debt allegedly from a consumer transaction that included agreements to defer payment.

7. Defendant Americollect, Inc. ("Americollect") is a domestic corporation with its principal place of business located at 1851 S. Alverno Rd., Manitowoc, WI 54220.

8. Americollect is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Americollect is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. Americollect is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Plaintiff Zukarov*

11. On or about July 5, 2017, Americollect mailed a debt collection letter to Plaintiff Zurakov regarding an alleged debt owed to "ERMED S.C." A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of a transaction for personal medical services with an agreement to defer payment. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer

2

transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred … in exchange for medical services …. Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Zurakov inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Americollect to attempt to collect alleged debts.

15. Exhibit A includes the following representation:

| CREDITOR NAME | ACCOUNT NUMBER | LAST ACTIVITY DATE | BALANCE |
|---|---|---|---|
| ERMED S.C. | 8287 | 08/13/2016 | $1154.64 |

16. Exhibit A additionally states that $1,154.64 is the "Amount Due."

17. Although Exhibit A states that $1,154.64 is the "Amount Due," the balance of the account is debt referenced in Exhibit A is accruing interest daily at the simple interest rate of 5% annually.

18. Because interest is accruing daily, by the time the consumer received Exhibit A, notwithstanding Americollect's representation that the amount stated is the "Total Due," payment of the amount stated in Exhibit A would not actually pay the debt in full.

19. On or about January 24, 2018, Americollect mailed another debt collection letter to Plaintiff Zurakov regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

3

Case 2:19-cv-01412-JPS    Filed 09/26/19    Page 3 of 19    Document 1

20. <u>Exhibit B</u> includes the following representation:

| CREDITOR NAME | ACCOUNT NUMBER | ACTIVITY DATE | BALANCE |
|---|---|---|---|
| ERMED S.C. | ▮287 | 08/13/2016 | $1185.90 |

21. <u>Exhibit B</u> additionally states that $1,185.90 is the "Amount Due."

22. <u>Exhibit B</u> states that, as of January 24, 2018, the balance of Plaintiff's alleged debt account was $1,185.90 but <u>Exhibit A</u> states that, as of July 5, 2017, the balance of Plaintiff's alleged Bell Ambulance account was $1,154.64.

23. <u>Exhibits A & B</u> refer to the same medical services. The different "Total Due" on each letter is due to the addition of interest, and not a consequence of any additional services that the creditor may have provided.

24. <u>Exhibit B</u> does not include any explanation of why the "Total Due" is increasing. *See, e.g., Beaufrand v. Portfolio Recovery Assocs., LLC,* No. 18-CV-214, 2018 U.S. Dist. LEXIS 197339 (E.D. Wis. Nov. 20, 2018) ("At that point [several days later], the unsophisticated consumer likely does not remember the details of the first letter he received…").

25. When the amount of the debt varies day to day, the debt collector should avoid confusion by including explanatory language in the letter. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000) ("As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]."); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004).

4

26. No such explanatory language was used in <u>Exhibit B</u>.

27. In *Chuway*, the Seventh Circuit made clear that the debt collector must use the safe harbor language in *Miller* or equivalent language, in cases where the debt collector is attempting to collect the listed balance plus the interest running on it or other charges. 362 F.3d at 949; *see also Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) (a collection notice violated § 1692e by stating the "current balance" without providing notice that the amount is increasing due to accruing interest or other charges.); *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094 **12-14 (7th Cir. Jan. 17, 2018) (*Miller*, including its "accuracy requirement," applies to claims brought under 15 U.S.C. § 1692e).

28. A court in this district recently held in a virtually identical scenario that when a debt collector is, in fact, collecting interest, the collector must use the *Miller* safe harbor or equivalent language, or risk confusing the unsophisticated consumer. *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 210895 at *17-20 (E.D. Wis. Dec. 22, 2017) ("*Spuhler II*") ("State Collection's letter undeniably does not contain any form of Miller's safe harbor language. Because State Collection's letter failed to inform the Spuhlers that interest was running on the amount owed, I find there is a triable issue of fact as to whether the collection letter is confusing or unclear on its face."); *see also Deporter v. Credit Bureau of Carbon County*, 2015 U.S Dist. LEXIS 55345, at *14-15 (D. Colo. Apr. 28, 2015) (debt collector violated § 1692e(2)(A) by not disclosing that interest was accruing on medical debt); *see also, Snyder v. Gordon*, 2012 U.S. Dist. LEXIS 120659, at *8-9 (W.D. Wash. Aug. 24, 2012); *Michalek v. ARS Nat'l Sys., Inc.*, 2011 U.S. Dist. LEXIS 142976, at *4 (M.D. Penn. Dec. 13, 2011); *Dragon v. I.C. Sys.*, 483 F. Supp. 2d 198, 202-03 (D. Conn. 2007); *Lukawski v. Client Servs., Inc.*, 2013 U.S. Dist. LEXIS 124075, at *10-14 (M.D. Penn. Aug. 29, 2013); *May v.*

*Consumer Adjustment Co.*, 2015 U.S. Dist. LEXIS 97162, at *15-20 (E.D. Mo. July 24, 2015); *Gill v. Credit Bureau of Carbon County*, 2015 U.S. Dist. LEXIS 58759, at *14 (D. Colo. May 5, 2014); *Smith v. Lyons, Doughty & Veldhuis, P.C.*, 2008 U.S. Dist. LEXIS 56725, at *16-20 (D.N.J. July 22, 2008); *Ivy v. Nations Recovery Ctr.*, 2012 U.S. Dist. LEXIS 78450, at *4-5 (E.D. Tenn. June 6, 2012) ("The April 28 letter indicates that plaintiff's debt continued to accrue interest and/or other charges. It is therefore plausible that the January 24 letter 'did not correctly state the amount of the debt because it failed to indicate that interest was accruing and the applicable interest rate ….' ") (quoting *Stonecypher v. Finkelstein Kern Steinberg & Cunningham, Attorneys*, 2011 U.S. Dist. LEXIS 88319, at *5 (E.D. Tenn. Aug. 9, 2011)); *Heffington v. Gordon, Aylworth & Tami, P.C.*, 2017 U.S. Dist. LEXIS 212570, at *16-17 (D. Ore. Dec. 28, 2017) ("At least two judges from the District of Oregon have followed two other districts in adopting an interpretation that no notice of on-going interest accrual is required *if a debt collector does not seek to collect any interest*.") (emphasis added).

29. Americollect's failure to include explanatory safe harbor language in Exhibits A & B is material because the unsophisticated consumer may pay the amount listed on Exhibits A & B, but the payment would not actually resolve the debt. The unsophisticated consumer would have no way of knowing if the debt was resolved because Exhibits A & B fail to explain what amount Americollect is actually collecting.

30. Americollect's failure to include explanatory safe harbor language in Exhibits A & B is also material because whether the account is bearing interest would undoubtedly be a factor in the unsophisticated consumer's prioritization of the debt. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into

6

making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]").

31. Further, even if Americollect disclosed that the account was bearing interest in a previous letter, the unsophisticated consumer is not expected to reference documents sent years prior to ameliorate the confusion. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) ("an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely"); *see also, Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 *17-20 (E.D. Wis. Oct. 26, 2017) ("*Spuhler I*") (the collection letter at issue in *Spuhler* was not an initial communication); *Lukawski*, 2013 U.S. Dist. LEXIS 124075, at *10, 11 (rejecting an argument that interest had been disclosed in a letter sent six weeks prior to the offending communication) ("the letter in question is deceptive in spite of the prior letter with the interest disclosure. .... These arguments, requesting that the letters be read together to place notice on Michalek of increasing balances, were made and rejected by the Court.") (citing *Michalek*, 2011 U.S. Dist. LEXIS 142976, at *18-19).

32. Plaintiff Zurakov read Exhibits A & B.

33. Plaintiff Zurakov was confused and misled by Exhibits A & B.

34. The unsophisticated consumer would be confused and misled by Exhibits A & B.

35. Plaintiff Zurakov had to spend time and money to investigate Exhibits A & B and the possible consequences of responding to Exhibits A & B.

7

### Facts Relating to Plaintiff Serifoski

36. On or about March 13, 2019, Americollect mailed a debt collection letter to Plaintiff Serifoski regarding an alleged debt owed to "EMERGENCY MEDICINE SPECIALISTS, S.C." ("EMS"). A copy of this letter is attached to this complaint as Exhibit C.

37. Upon information and belief, the alleged debt referenced in Exhibit C was incurred as the result of two separate transactions for personal medical services, each with an agreement to defer payment.

38. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

39. Upon information and belief, Exhibit C is a form debt collection letter used by Americollect to attempt to collect alleged debts.

40. Exhibit C claims to be collecting two separates debts, both owed to EMS. One of the debts was allegedly incurred on July 7, 2017 and the other on May 21, 2018.

41. Exhibit C includes the following representation:

> As of the date of this letter, you owe $823.00. Because of interest, that may vary from day to day, the amount due on the day you pay may be greater. If you make a payment and there is still an amount due, we will let you know the remaining amount due, upon request.

42. Exhibit C is false and misleading to the unsophisticated consumer.

43. The EMS debts in Exhibit C were not incurring interest at the time Americollect mailed Exhibit C to Serifoski.

44. On or around August 22, 2018, Americollect had sent a previous debt collection letter to Plaintiff Serifoski, seeking to collect the same July 7, 2017 EMS account as referenced in Exhibit C. A copy of the August 22, 2018 letter is attached as Exhibit D.

45. The balance of the July 7, 2017 EMS account reflected on Exhibit D, and on Exhibit C six months later, is exactly the same: $512.00.

8

46. Upon information and belief, EMS does not add interest to accounts like Plaintiff Serifoski's as a matter of course.

47. Americollect's letter misrepresents that interest may be added to Plaintiff Serifoski's alleged debts, despite that EMS has no intention of doing so and has not permitted Americollect to add interest on EMS's behalf.

48. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that "*Miller's* accuracy requirement still applies," and that very language may, in fact, violate the FDCPA under other circumstances. *E.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances.")

49. Language falsely stating or implying that interest may be added to a debt is false and misleading when there is no actual intent to add interest to the debt. Such language is also material, as the false threat of the balance increasing over time may influence the consumer to prioritize paying that debt over other debts and other debt collectors who have not made the same misrepresentation.

50. Plaintiff Serifoski read Exhibits C & D.

51. Plaintiff Serifoski was confused and misled by Exhibits C & D.

52. The unsophisticated consumer would be confused and misled by Exhibits C & D.

53. Plaintiff Serifoski had to spend time and money to investigate Exhibits C & D and the possible consequences of responding to Exhibits C & D.

9

## *The FDCPA*

54. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a

10

lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

55. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

56. Misrepresentations of the character, amount or legal status of any debt, including misrepresentations to the effect that the balance of the debt is increasing, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs., 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); Untershine v. Encore Receivable Mgmt., Inc., 18-cv-1484 (E.D. Wis. August 9, 2019); Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a

11

communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

57. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

58. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

59. 15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

60. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

61. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

62. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

63. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

64. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

65. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

66. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

67. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

68. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

69. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

70. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

71. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

72. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

73. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten[ action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

74. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

75. Although the FDCPA does not authorize injunctive or declaratory relief, *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 507 n.3 (D. Md. Mar. 11, 2013), these forms of relief are available under the WCA. Wis. Stat. §§ 426.109(1); 426.110(4)(e); 426.110(6)(b).

76. The WCA expressly authorizes individual actions to enjoin "any person who in . . . enforcing consumer credit transactions engages in … False, misleading, deceptive, or unconscionable conduct in enforcing debts … arising from consumer credit transactions." Wis. Stat. § 426.110(2)(c); *see* Wis. Stat. § 426.110(3).

77. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 … or by a violation of the federal consumer credit protection act … [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

78. The WCA authorizes customers to bring class actions for injunctive relief to cure violations of Wis. Stat. § 427.104(1).

## COUNT I – FDCPA

79. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. Count I is brought on behalf of Plaintiff Zurakov.

81. By failing to disclose Plaintiff's Zurakov's alleged debt was subject to the accrual of interest, Exhibits A & B include representations which are false, deceptive, and misleading as to the amount, character, and legal status of such debt.

15

82. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

## COUNT II – WCA

83. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Count II is brought on behalf of Plaintiff Zurakov.

85. By failing to disclose Plaintiff's Zurakov's alleged debt was subject to the accrual of interest, Exhibits A & B violated the FDCPA.

86. Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

87. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT III -- FDCPA

88. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. Count III is brought on behalf of Plaintiff Serifoski.

90. By representing that Plaintiff Serifoski's alleged debt may be subject to the accrual of interest, Exhibit C includes representations which are false, deceptive, and misleading as to the amount, character, and legal status of such debt and falsely threatens to impose interest on such debt.

91. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), and 1692f.

## COUNT IV -- WCA

92. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93.  Count IV is brought on behalf of Plaintiff Serifoski.

94.  By representing that Plaintiff Serifoski's alleged debt may be subject to the accrual of interest, Exhibit C falsely threatens to impose interest on such debt.

95.  Exhibit C similarly violate the FDCPA.

96.  Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

97.  Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

98.  Plaintiffs brings this action on behalf of a two Classes

99.  Class I consists of: (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters by Defendant in the form of Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) in which the "Total Due" increases over time due to the addition of interest but no explanatory language is provided in the letter, (e) between September 26, 2018 and September 26, 2019, inclusive, (f) that was not returned by the postal service. Plaintiff Zurakov is the designated representative for Class I.

100.  Class II consists of: (a) all natural persons in the State of Wisconsin (b) who were sent collection letters by Defendant in the form of Exhibit C to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) in which the creditor has not authorized Americollect to add interest to the account, (e) between September 26, 2018 and September 26, 2019, inclusive, (f) that was not returned by the postal service. Plaintiff Serifoski is the designated representative for Class II.

101. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

102. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA and/or the WCA.

103. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

104. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

105. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

106. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: September 26, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com